Erna Mamikonyan (State Bar No. 302000)
emamikonyan@JonesDay.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL KISSICK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN RESIDENTIAL SERVICES, LLC,<br><br>Defendant. | Case No. 2:19-CV-01460-MWF-SS<br><br>Assigned for all purposes to Hon. Michael W. Fitzgerald<br><br>**DEFENDANT'S NOTICE OF MOTION AND (1) MOTION TO DISMISS OR (2) IN THE ALTERNATIVE,  TRANSFER VENUE TO THE WESTERN DISTRICT OF TENNESSEE, OR (3) IN FURTHER ALTERNATIVE, MOTION TO DISMISS ALLEGATIONS OF NON-CALIFORNIA PUTATIVE CLASS MEMBERS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF NEAL ZAMORE IN SUPPORT THEREOF** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 24, 2019, at 10:00 a.m., before the Honorable Michael W. Fitzgerald in Courtroom 5A of the United States District Court for the Central District of California located at 350 West First Street, Courtroom 5A, Los Angeles, California 90012-4565, Defendant American Residential Services, LLC ("ARS") will and hereby does move the Court for an Order (1) dismissing this case pursuant to Rule 12(b)(6), or (2) in the alternative, transferring this case to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a), or (3) in the further alternative, dismissing allegations of non-California Putative Class members pursuant to Rule 12(b)(2) based on a lack of personal jurisdiction.  As set forth in the accompanying Memorandum of Points and Authorities in Support, the Complaint fails to state a claim for relief.  In the alternative, pursuant to 28 U.S.C. § 1404(a), the interests of justice and convenience factors support transfer of this case to the Western District of Tennessee.  Alternatively, if the Court does not transfer the case and does not dismiss it, at a minimum, the Court should dismiss the claims of putative class members outside California based on a lack of personal jurisdiction over those claims against ARS in the circumstances present here.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 3, 2019.  Jones Day (attorney J. Todd Kennard), counsel for ARS, met and conferred with Allyson Shea, counsel for Plaintiff.  In addition, before that conference, counsel for ARS met and conferred with Ms. Shea and requested a dismissal of the case and provided declarations in support of that request (declarations provided on April 25, 2019).  On May 7, ARS's counsel followed up with an email, to which Plaintiff's counsel responded with a voicemail

1  message confirming that the parties have been unable to resolve the issues raised in

2  this motion.

3

4

5  May 10, 2019                                          JONES DAY

6

7                                                        By: /s/ Erna Mamikonyan
                                                             Erna Mamikonyan

8                                                        Attorneys for Defendant
9                                                        American Residential Services, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................... 1

    A.    The Complaint Fails to State a Claim for Relief ................................... 1

    B.    If the Court Does Not Dismiss, It Should Transfer The Case .............. 1

    C.    In All Events, The Claims of Non-California Putative Class
        Members Should be Dismissed If The Case Remains Here ................. 2

II.   CASE BACKGROUND ........................................................................... 3

III.  ARGUMENT ........................................................................................... 4

    A.    The Complaint Fails to State A Claim For Relief ................................. 4

        1.    Legal Standard .......................................................................... 4

        2.    Plaintiff's Claim Should Be Dismissed ..................................... 5

        3.    All Class Claims Should Be Dismissed In Any Event .............. 8

    B.    In The Alternative, The Case Should Be Transferred To The
        Western District of Tennessee ............................................................. 9

        1.    Legal Standard .......................................................................... 9

        2.    This Case Could Have Been Brought In The Western
            District of Tennessee ............................................................... 10

        3.    Transferring This Case To The Western District of
            Tennessee Would Advance Convenience and the Interest
            of Justice ................................................................................. 11

            a.    The Western District of Tennessee is More
                Convenient for the Parties ............................................. 11

            b.    The Western District of Tennessee is More
                 Convenient for Key Witnesses ..................................... 14

            c.    The Interest of Justice is Best Served By
                 Transferring This Case to the Western District of
                Tennessee ..................................................................... 16

**TABLE OF CONTENTS**
**(continued)**

Page

C.    If The Court Does Not Transfer The Case To The Western
District Of Tennessee, The Court Should, In Further Alternative,
Dismiss The Claims of Unnamed, Out-Of-State Putative Class
Members Pursuant To Rule 12(b)(2) (Or Strike Those
Allegations From The Complaint) ........................................................ 19

IV.        CONCLUSION ..................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page**

**FEDERAL CASES**

*Ace Mold (Heifei) Co. Ltd. v. AliphCom*
  No. CV 15–8127–RSWL–Ex, 2016 WL 8252923 (C.D. Cal. Oct.
  17, 2016) ............................................................................................. 13, 18

*America's Health and Resource Ctr., Ltd., v. Promologics, Inc.*
  No. 16 C 9281, 2018 WL 3474444 (N.D. Ill. July 19, 2018) ...................... 20, 22

*Arce v. Bluestem Brands, Inc.*
  No. CV 15–8068 DSF, 2016 WL 7444864 (C.D. Cal. Mar. 10,
  2016) ......................................................................................................... 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................. 4

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................................. 4

*BeRousse v. Janssen Research & Dev., LLC*
  No. 3:17-cv-00716, 2017 WL 4255075 (S.D. Ill. Sept. 26, 2017) ................. 21

*BNSF Ry. Co. v. Tyrrell*
  137 S. Ct. 1549 (2017) .............................................................................. 19

*Bondali v. Yum! Brands, Inc.*
  No. SACV 13-117-JST, 2013 WL 12129379 (C.D. Cal. May 1,
  2013) ......................................................................................................... 17

*Bristol-Myers Squibb Co. v. Superior Court of California*
  137 S. Ct. 1773 (2017) ...................................................................... 19, 20, 21, 22

*Bussen v. WestPark Capital Fin. Servs., LLC*
  No. CV 14-6609 PSG, 2014 WL 11512591 (C.D. Cal. Dec. 4,
  2014) .............................................................................................. 15, 17, 18

*Castillo v. Cox Commc'ns, Inc.*
  No. CV 10-04049-DMG, 2010 WL 11527024 (C.D. Cal. Aug. 3,
  2010) ......................................................................................................... 14

*Cholla Ready Mix, Inc. v. Civish*
   382 F.3d 969 (9th Cir. 2004) .................................................. 4

*Cook v. Brewer*
   637 F.3d 1002 (9th Cir. 2011) ............................................... 4

*Core Litig. Tr. by & through Kravitz v. Apollo Glob. Mgmt., LLC*
   No. 2:17–cv–00927 JFW, 2017 WL 3045919 (C.D. Cal. Apr. 5,
   2017) .................................................................................... 11

*Cung Le v. Zuffa, LLC*
   108 F. Supp. 3d 768 (N.D. Cal. 2015) .................................. 16

*Daimler AG v. Bauman*
   134 S. Ct. 746 (2014) .......................................................... 10

*Denver & Rio Grande W. Ry. Co. v. Brotherhood of R.R. Trainmen*
   387 U.S. 556 (1967) ............................................................ 11

*Estrella v. Freedom Fin. Network, LLC*
   No. SACV09–0189 DOC, 2009 WL 10678991 (C.D. Cal. July 9,
   2009) .................................................................................... 16

*In re Dental Supplies Antitrust Litig.*
   No. 16 Civ. 696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ....................... 22

*In re Samsung Galaxy Smartphone Marketing and Sales Practices Lit.*
   No. 16-cv-06391, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ..................... 21

*Irrevocable Tr. of Anthony J. Antonious v. Tour Edge Golf Mfg., Inc.*
   No. CV 10–2636–GHK, 2010 WL 11523708 (C.D. Cal. Aug. 31,
   2010) .................................................................................... 18

*Jinright v. Johnson & Johnson, Inc.*
   No. 17-1849, 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017) ............................ 21

*Jovel v. i-Health, Inc.*
   No. CV 12–05526 DDP, 2012 WL 5470057 (C.D. Cal. Nov. 8,
   2012) .............................................................................. 14, 18

*Lewis v. Sw. Airlines Co.*
   No. 16-cv-00749-JCS, 2016 WL 3091998 (N.D. Cal. June 2, 2016) ................ 12

*LFG Nat. Capital, LLC v. Gary, Williams, Finney, Lewis, Watson & Sperando, P.L.*
  No. CV 11–9988 PSG, 2012 WL 8109236 (C.D. Cal. Mar. 9, 2012) ............... 11

*Lodestar Anstalt v. Bacardi & Co.*
  No. 2:16–cv–06411–CAS–FFM, 2017 WL 1434265 (C.D. Cal.
  Apr. 21, 2017)..................................................................... 13, 18

*Lou v. Belzberg*
  834 F.2d 730 (9th Cir. 1987) ............................................................... 12

*Maclin v. Reliable Reports of Texas, Inc.*
  314 F. Supp.3d 845 (N.D. Ohio Mar. 26, 2018) ............................................ 20, 22

*McCormack v. Medcor, Inc.*
  No. 2:13–CV–02011 JAM CKD, 2014 WL 1934193 (E.D. Cal.
  May 14, 2014)..................................................................... 15

*McDonnell v. Nature's Way Prods., LLC*
  No. 16-5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017)........................................ 21

*Metz v. U.S. Life Ins. Co. in City of New York*
  674 F. Supp. 2d 1141 (C.D. Cal. 2009).............................................. 9, 11, 14, 15

*Mussat v. IQVIA Inc.*
  No. 17 C 8841, 2018 WL 5311903 (N.D. Ill. Jan. 22, 2019)............................... 20

*Park v. Dole Fresh Vegetables, Inc.*
  964 F. Supp. 2d 1088 (N.D. Cal. 2013)................................................ 13

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*
  No. 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017).................................... 22

*Practice Mgmt . Support Servs., Inc. v. Cirque du Soleil*
  301 F. Supp. 3d 840 (N.D. Ill. 2018) ) ............................................ 20, 22

*Rabinowitz v. Samsung Elecs. Am., Inc.*
  No. 14–cv–00801–JCS, 2014 WL 5422576 (N.D. Cal. Oct. 10,
  2014)........................................................................ 12

*Saleh v. Titan Corp.*
  361 F. Supp. 2d 1152 (S.D. Cal. 2005) .................................................9

*Signal IP, Inc. v. Ford Motor Co.*
  No. LA CV14–03106 JAK, 2014 WL 4783537 (C.D. Cal. Sept. 25,
  2014) ............................................................................................... 13, 14, 18

*Silva v. Aviva PLC*
  No. 15-cv-02665-PSG, 2016 WL 1169441 (N.D. Cal. Mar. 25,
  2016) ...................................................................................................... 16, 17

*Smith v. Aitima Med. Equip., Inc.*
  No. 16-00339, 2016 WL 4618780 (C.D. Cal. July 29, 2016) ..................... passim

*Spratley v. FCA US LLC*
  No. 317-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ................... 21

*Van Patten v. Vertical Fitness Group., LLC*
  847 F.3d 1037 (9th Cir. 2017) ........................................................................ 7

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*
  No. CV 11–9495 PSG, 2013 WL 4517242 (C.D. Cal. Aug. 26,
  2013) ............................................................................................................ 12

*Ventress v. Japan Airlines*
  486 F.3d 1111 (9th Cir. 2007) ...................................................................... 11

*Wenokur v. AXA Equitable Life Ins. Co.*
  No. CV-17-00165-PHX-DLR, 2017 WL 4357916 (D. Ariz. Oct. 2,
  2017) ............................................................................................................ 22

**FEDERAL STATUTES**

28 U.S.C. ................................................................................................................ 1

28 U.S.C. § 1391(b)(1) ......................................................................................... 10

28 U.S.C. § 1391(c)(2) ......................................................................................... 10

28 U.S.C. § 1404(a) ....................................................................................... passim

Telephone Consumer Protection Act .............................................................. passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(a) .......................................................................................... 9

47 C.F.R. § 64.1200(a)(1)(iii) ............................................................................... 5

47 C.F.R. § 64.1200(a)(2) .................................................................................. 5

U.S. Const. Fifth Amendment ................................................................... 21, 22

U.S. Const. Fourteenth Amendment ......................................................... 21, 22

Fed. R. Civ. Rule 12(b)(2) ............................................................................. 19

Fed. R. Civ. Rule 12(b)(6) ........................................................................... 1, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION**

    A.    **The Complaint Fails to State a Claim for Relief**

Defendant American Residential Services, LLC ("ARS") moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and applicable law, to dismiss the Complaint for failure to state a claim for relief.  This case is based on one alleged telephone call where the Plaintiff says there was a "momentary pause" when he answered the call.  The Complaint does not actually allege he even actually talked with anybody or that there was even any kind of message conveyed.  (Doc. 1, Compl. ¶ 10, 12.)  Yet, Plaintiff asserts a putative nationwide class action without even alleging that ARS ever actually spoke with him or sent him a specific message of any kind.  A prior decision from this Court dismissed a complaint with substantially similar (if not stronger) allegations.  *Smith v. Aitima Med. Equip., Inc.*, No. 16-00339, 2016 WL 4618780 (C.D. Cal. July 29, 2016).  The same applies here to warrant dismissal of this Complaint.

In addition, ARS also moves to dismiss from the Complaint claims that are alleged on behalf of a putative nationwide class.  The class, as defined, does not state cognizable claims under the Telephone Consumer Protection Act ("TCPA") or applicable regulations of the Federal Communications Commission ("FCC").  Accordingly, the class claims should be dismissed.

    B.    **If the Court Does Not Dismiss, It Should Transfer The Case**

In the alternative, ARS respectfully requests transfer of this action under 28 U.S.C. § 1404(a) to the Western District of Tennessee.  That district is a more appropriate and convenient venue for this action.

ARS is headquartered in Memphis, Tennessee, and virtually all strategic decisions made by ARS relating to ARS's marketing strategy are made there.  As a result, the majority (if not all) of ARS's witnesses and the bulk (if not all) of the

documentation and other evidence related to the issues in dispute are located in Tennessee.

These witnesses and related evidence are key to the issues in dispute, including the origins and implementation of ARS's marketing efforts, including telephone communications.  The witnesses are also vital in demonstrating that ARS does not use automatic telephone dialing systems to call consumers with whom ARS has no prior business relationship, an issue at the heart of the allegations in the Complaint.  The witnesses can also discuss how ARS interacts with consumers on the telephone and other aspects of ARS's marketing and customer service procedures and protocols.  All of this weighs heavily in favor of transferring this action to the Western District of Tennessee.

In contrast, the connections between California and the parties and allegations in this action are tenuous, at best.  While Plaintiff Kissick resides in California, because he sued on behalf of a nationwide class, his choice of venue is entitled to substantially less weight in the transfer analysis.  The federal court in Tennessee is just as equipped as this Court to decide any questions of federal law that Plaintiff's TCPA claims present.

## C.   In All Events, The Claims of Non-California Putative Class Members Should be Dismissed If The Case Remains Here

In any event, based on the allegations in the Complaint, the Court may not exercise personal jurisdiction over ARS with respect to the claims of putative class members residing outside the State of California, who allege they suffered injuries outside of California that were allegedly caused by activity outside of the State of California.  Those claims therefore must be dismissed or, alternatively, stricken from the Complaint if the Court declines to transfer this matter.

## II.   CASE BACKGROUND

*Plaintiff.*  Plaintiff Daniel Kissick asserts that he received a single call from ARS from telephone number (614) 239-0855 in violation of the TCPA.  (Complaint ¶ 10.)

*Defendant.*  As the Complaint acknowledges, ARS maintains its principal place of business in Tennessee and is incorporated in Delaware.  (Complaint ¶ 2.)  Multiple potential ARS employee witnesses reside in Tennessee.  (Declaration of Neal Zamore ("Zamore Decl."))  These individuals will speak to ARS's marketing operations, including any relevant marketing operations utilized by ARS or its agents.  By contrast, Plaintiff does not identify any specific California-based activities by ARS.  (*See generally* Complaint.)

*Plaintiff's Claim.*[1]

Plaintiff Kissick alleges that ARS called him "using an automatic telephone dialing system without his prior express consent at least once."  (*Id.* ¶ 10.)  The only call identified is a single call allegedly received by Kissick on December 14, 2018.  (*Id.*)  Plaintiff claims that "he heard a momentary pause" when he answered the call, which he claims is "a hallmark of a predictive dialer."  (*Id.* ¶ 12.)  Although it is not entirely clear that Plaintiff claims the call was to a cell phone of his in that Paragraph, the Complaint elsewhere alleges that he is a member of the class of persons who received calls on cellular telephones.  (*See id.* ¶¶ 15-17.)  Plaintiff does not allege any facts about the contents of the telephone call he received.  Indeed, *Plaintiff does not even claim that anyone communicated with him on that call*, much less provide a description of the call.  Presumably, there was no actual communication because he says that he called back the number and heard a recorded message that said:  "Thank you for calling ARS Rescue Rooter."  He does

---

[1] ARS assumes certain facts alleged in the Complaint to be true for purposes of this motion only.

not assert that he ever communicated with anyone from ARS after he called the alleged recording.

From a single alleged call, Plaintiff seeks to assert claims on behalf of a nationwide class defined to include the following individuals:

> All persons within the United States who (a) received a telephone call on his or her cellular telephone; (b) made by or on behalf of Defendant; (c) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

(Compl. ¶ 16.)  The other allegations in the Complaint are pled in a conclusory fashion.  For example, Plaintiff claims that "Defendant knowingly made (and continues to make) autodialed calls to consumers' telephones without the prior express written consent of the call recipients."  (*Id.* ¶ 14.)  There are no specific facts in the Complaint, however, supporting these conclusory allegations.

## III.   ARGUMENT

### A.   The Complaint Fails to State A Claim For Relief

#### 1.   Legal Standard

A motion to dismiss for failure to state a claim should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 550 U.S. at 678; *Cook*, 637 F.3d at 1004.  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 550 U.S. at 678; *see also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts

alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted).

### 2. Plaintiff's Claim Should Be Dismissed

FCC regulations prohibit the initiation of "any *telephone call* . . . using an automatic telephone dialing system . . . [t]o any telephone number assigned to a . . . cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii). A call that "includes or introduces an *advertisement or constitutes telemarketing*" may be placed to a cellular telephone using an automatic telephone dialing system ("ATDS") with the called party's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

The Complaint in this case does not state a claim for relief under the TCPA because it does not provide sufficient factual allegations under the statute or otherwise confer standing. Although many different courts have reached different results based on different factual allegations, this Court in *Smith v. Aitima Medical Equipment, Inc.* dismissed a Complaint making allegations that were similar to the ones alleged here. The plaintiff in that case "received one phone call" using an autodialer and/or an artificial or prerecorded voice. *Smith*, No. 16-00339, 2016 WL 4618780, at *1 (C.D. Cal. July 29, 2016). The complaint alleged that after answering the phone the plaintiff "'heard a pause or dead air before anyone on the line began to speak.'" *Id*. (quoting *Smith* Complaint). The Plaintiff asserted that the pause "indicated Defendant's use of an automatic telephone dialing system." The plaintiff filed a putative class action. *See id*.

The Court in *Smith* found that the plaintiff's allegations should be dismissed because the plaintiff "failed to meet her burden to allege facts to state a claim under the TCPA." *Id*. at *6. "The only facts Plaintiff alleges to support this conclusory allegation [of a call to a cell phone using an auotdialer and/or artificial or prerecorded voice] are that she received one phone call, the call was to sell medical equipment, and when Plaintiff answered the phone, she heard a pause before

1  anyone began to speak.  Plaintiff argues that these allegations give rise to a

2  plausible inference that an ATDS was used."  *Id*. at *5.  In rejecting the plaintiff's

3  argument, the Court distinguished other cases the plaintiff cited, *id*. at *5-*6 and

4  later explained:

> In these cases and the others cited by Plaintiff in her
> Opposition, the plaintiffs alleged hearing dead air or a
> pause on several phone calls in addition to other
> allegations of numerous calls, no voicemails, persistency
> of calls, and callbacks to a prerecorded voice.  Turning to
> the case before the Court, ***Plaintiff has alleged hearing
> only one pause on only one phone call***.  The pause could
> be an accidental hang up, a mistake from someone
> realizing they had the wrong number, a bad connection, or
> the use of an ATDS.  ***Plaintiff alleges no facts that allow
> the Court to shift from speculation to a plausible
> inference that the pause was because Defendant used an
> ATDS.***  And because Plaintiff only received one call, an
> inference of use of an ATDS for the call is just as possible
> as the call being made by a live person.  ***One call and one
> pause, standing alone, do not take the claim of the use
> of an ATDS beyond the speculative level.***

14  *Id*. at *6 (emphasis added).

15      The Court in *Smith* also considered alleged complaints from other

16  consumers.  *See id*. at *6.  Here, the Complaint does not allege any other consumers

17  have complained about alleged calls.

18      The Third Circuit recently rejected a plaintiff's TCPA claims where "even

19  though the complaint makes generalized class action allegations, it does not

20  specifically identify a single recipient of the fax that [plaintiff] received without

21  solicitation, by a recipient other than [plaintiff]."  *Mauthe v. Nat'l Imagining

22  Assocs., Inc.*, N. 188-2119, 2019 WL 1752591, at *4 (3d Cir. Apr. 27, 2019).  As

23  the Court explained:

> If the complaint had included explicit factual allegations
> of other identified individuals receiving this fax survey
> without solicitation that circumstance might have been
> material to our analysis here, but it did not make such
> explicit allegations.  Thus, ***the theory of liability based on
> a nonobvious promotion of defendant's services through
> the sending of multiple faxes is a mere conclusory
> statement rather than a factual allegation***.  In fact, based
> on the factual allegations in the complaint, it was just as

1
2
> plausible that defendant sent the fax to [plaintiff] by
> mistake, and not because defendant was attempting to
> make a sale to him.

3 *Id*. (emphasis added).

4      Here, as in *Smith*, Plaintiff Kissick identifies only a single alleged call that

5 involved a "pause." (Compl. ¶ 10, 12.)[2] Indeed, if anything, the allegations here

6 are even more deficient than the allegations in *Smith* because this Complaint does

7 not identify any other customer complaints and indeed *nowhere even alleges that*

8 *ARS tried to "sell" anything to Kissick or that it actually conveyed any message in*

9 *the allegedly violative call* given that Kissick does not even claim that any message

10 was communicated at all. (Compl. ¶ 10; compare with *Smith*, 2016 WL 4618780,

11 at *1 ("The phone call was regarding the sale of medical equipment")). As in

12 *Smith*, the Court dismiss this Complaint.[3]

13      The Complaint's failure to identify or allege the content of the alleged call is

14 telling. As the Court noted in *Smith*, a "pause" by itself on one call does not allow

15 the inference to be drawn that an ATDS was used. It could be a manually dialed

16 call, it could be a wrong number, etc. That is particularly true when there is not

17 even an allegation of the content of the calls (as there was in *Smith*) and there is no

---

18    [2] The Court in *Smith* elsewhere explained that "Plaintiff alleges no facts
19 regarding whether the equipment Defendant used has the capacity to store numbers
to place calls at random. Receiving only one call and hearing only one pause does
20 not create a plausible inference regarding the capacity of equipment to store phone
numbers or to make random calls." *Id*. at *6. While in *Marks v. Crunch San*
21 *Diego, LLC* the Ninth concluded that "the statutory definition of ATDS includes a
device that stores telephone numbers to be called, whether or not those numbers
22 have been generated by a random or sequential number generator," that case did not
address the question here of whether a single alleged telephone call that never even
23 identifies any content of the call plausibly states that an ATDS was used. 904 F.3d
1041, 1043 (9th Cir. 2018). Here, there is no allegation regarding an ATDS other
24 than a "pause" for a single call that is not even alleged to have had any marketing or
advertising content.

25    [3] The Court in *Smith* also dismissed the complaint on standing grounds. 2016
26 WL 4618780, at *3-5. The Ninth Circuit subsequently concluded that "[u]nsolicted
telemarketing phone calls or text messages, by their nature, invade the privacy and
27 disturb the solitude of their recipients. A plaintiff alleging a violation under the
TCPA 'need not allege any *additional* harm beyond the one Congress has
28 identified.'" *Van Patten v. Vertical Fitness Group., LLC*, 847 F.3d 1037, 1043 (9th
Cir. 2017) (emphasis in original) (citation omitted).

allegation of repeated or consistent calls.  Indeed, the facts alleged in the Complaint—including that the number Plaintiff "called back" was associated with ARS—is completely consistent with wrongful "spoofing" of by a third-party as opposed to a wrongful single call by ARS.[4]  But, of course, where we are in this case means that the Court does not need to speculate on the details of the call or its content.  The burden is on Plaintiff to allege factual allegations to support his claim.  As in *Smith*, he has not done so based on a single call (here, without even identifying any alleged content).  Accordingly, for all of these reasons, the Complaint should be dismissed

### 3.     All Class Claims Should Be Dismissed In Any Event.

The claims alleged on behalf of the putative class should be dismissed because they do not fall within the universe of calls that are proscribed by the TCPA or relevant FCC regulations.  As such, the class allegations fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

The class allegations in the Complaint do not include sufficient, well-pled factual content to state a claim under the TCPA.  As an initial matter, aside from recitations of the statutory standards and conclusory assertions, there is virtually no factual content in the Complaint that plausibly supports the conclusion that ARS engaged in *any* nationwide telemarketing campaign.  The Complaint alleges a single call to a single Plaintiff and fails to even describe the content of that call.  (*See generally* Compl. ¶¶ 10-12.)

Moreover, the class defined in the Complaint includes literally every individual who received a telephone call from ARS on a cellular telephone over the last four years.  (Compl. ¶ 16.)  Among other things, the class is not limited by

---

[4] According to the Federal Communications Commission:  "Caller ID spoofing is when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity. Spoofing is often used as part of an attempt to trick someone into giving away valuable personal information so it can be used in fraudulent activity or sold illegally, but also can be used legitimately, for example, to display the toll-free number for a business."
https://www.fcc.gov/search/#q=spoofing  (last visited May 8, 2019).

(i) the technology (or lack thereof, such as manually dialing) used to call a class member;[5] (ii) the content of the call placed to a class member (and would arguably even cover calls made in response to inquiries by consumers).  Rather, every person who received a call from ARS on a cellular phone in the past four years would appear to be included in the class, as currently defined.  (*Id.*)[6]

Because the Complaint fails to allege facts that would support claims on behalf of the putative class members, the class allegations in the Complaint should be dismissed.

**B.     In The Alternative, The Case Should Be Transferred To The Western District of Tennessee**

**1.     Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) (quoting *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005)).

Courts in the Ninth Circuit analyze Section 1404(a) motions using a two-part analysis.  ***First***, "the defendant must establish that the matter 'might have been brought' in the district to which transfer is sought."  *Id.*  ***Second***, the court must consider whether the following three factors weigh in favor of transfer:  "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice."  *Id.*  Because this case could have been brought in the Western District of Tennessee and balancing the three factors decisively favors transfer, the Court should transfer this action to the Western District of Tennessee.

_____

[5] Manually dialed telephone calls are outside of the TCPA's prohibitions set forth in applicable regulations.  *See generally* 47 C.F.R. § 64.1200(a).

[6] ARS reserves the right to assert other objections to any proposed class.

### 2.   This Case Could Have Been Brought In The Western District of Tennessee

The first element of the Section 1404(a) analysis is easily satisfied.  A case "might have been brought" in the transferee court where "subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought"—here, the Western of Tennessee.  *Id.* (internal quotation and citation omitted).  Each requirement is satisfied here.

Starting with subject matter jurisdiction, the Western District of Tennessee has such jurisdiction over this action for the same reason that this Court does.  Plaintiff brings a federal TCPA claim against ARS, giving the court federal question jurisdiction over the TCPA claim.

ARS is also subject to personal jurisdiction in the Western District of Tennessee.  As the Complaint alleges, ARS "is a corporation organized under the laws of Delaware, with a principal place of business at 965 Ridge Lake Boulevard, Suite 201, Memphis, TN  38120."  (Complaint ¶ 2; *see also* Zamore Decl.)  A corporation's state of incorporation and principal place of business are "paradigm all-purpose forums."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotation and citation omitted).

Lastly, venue in the Western District of Tennessee would be proper.  Under the general federal venue statute, a case may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  For purposes of venue, corporations are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction."  28 U.S.C. § 1391(c)(2).  Thus, ARS is properly considered a resident of the Western District of Tennessee.

3.   **Transferring This Case To The Western District of Tennessee Would Advance Convenience and the Interest of Justice.**

The second prong of the Section 1404(a) analysis is also satisfied.  In evaluating this prong, the transferor court considers whether the following factors weigh in favor of transfer, which can include (depending on the case):  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice."  *Metz*, 674 F. Supp. 2d at 1145; 28 U.S.C. § 1404(a).  When analyzing these factors, the Court may also consider a number of other factors drawn from the *forum non conveniens* context, including:  (1) the location where relevant agreements were negotiated and executed; (2) the parties' contacts with the forum; (3) the contacts relating to the plaintiff's cause of action in the chosen forum; (4) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (5) the state that is most familiar with the governing law; (6) the differences in the costs of litigation between the two forums; (7) the ease of access to sources of proof; and (8) "the plaintiff's choice of forum."  *LFG Nat. Capital, LLC v. Gary, Williams, Finney, Lewis, Watson & Sperando, P.L.*, No. CV 11–9988 PSG, 2012 WL 8109236, at *2–3 (C.D. Cal. Mar. 9, 2012).  While no single factor is dispositive, *see Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007), "[t]he convenience of the parties and the witnesses are often the most important factors," *Core Litig. Tr. by & through Kravitz v. Apollo Glob. Mgmt., LLC*, No. 2:17–cv–00927 JFW, 2017 WL 3045919, at *4 (C.D. Cal. Apr. 5, 2017); *cf. also Denver & Rio Grande W. Ry. Co. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses.") (Section 1406 case).

As shown below, balancing these factors supports a transfer of venue.

a.   **The Western District of Tennessee is More Convenient for the Parties.**

In considering the convenience of the parties, "[a] court must balance the plaintiff's choice of forum against the burden of litigating in an inconvenient forum." *Arce v. Bluestem Brands, Inc.*, No. CV 15–8068 DSF, 2016 WL 7444864, at *2 (C.D. Cal. Mar. 10, 2016) (citation omitted). Here, the required balancing favors transfer.

To begin, Plaintiff's choice of venue in this case is entitled to little, if any, weight. To be sure, a plaintiff in a federal case typically enjoys deference to his or her initial choice of venue. But that is not true when the plaintiff sues on behalf of a class. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Indeed, Plaintiff purports to bring claims on behalf of a nationwide class, and Plaintiff's "choice of forum is accorded less deference." *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11–9495 PSG, 2013 WL 4517242, at *6 (C.D. Cal. Aug. 26, 2013) (citing *Belzberg*, 834 F.2d at 739). *See Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14–cv–00801–JCS, 2014 WL 5422576, at *3 (N.D. Cal. Oct. 10, 2014) ("Plaintiffs also seek to represent a nationwide class and/or several subclasses [including a California subclass] . . . . Under such circumstances, 'Plaintiffs' choice of forum is entitled to minimal deference.'") (internal citations and quotations omitted); *Lewis v. Sw. Airlines Co.*, No. 16-cv-00749-JCS, 2016 WL 3091998, at *4 (N.D. Cal. June 2, 2016) (same).

While Plaintiff's initial choice of California deserves little (if any) weight in the analysis, the inconvenience to ARS of litigating in California weighs heavily in favor of transfer. Indeed, the Western District of Tennessee is significantly more convenient for ARS. ARS maintains its principal place of business in Memphis, Tennessee.

Not surprisingly, the ARS employee responsible for overseeing ARS's marketing operations works out of ARS's corporate offices in Memphis. (Zamore Decl. ¶ 4.) The same employee is assisted by approximately fifteen other ARS employees who also work in Memphis. (*Id*.) All decisions regarding marketing on

a national basis (including what types of consumers may be called) are made by ARS employees and executives who work in the Memphis headquarters.  (*Id*. at ¶ 5.)  Other ARS potential employee witnesses also work in Memphis.  (*Id*. at ¶ 6.)

Requiring ARS to make these and other key employee witnesses available for discovery and trial in California would be both expensive and unnecessarily disruptive to ARS's business operations.  *See, e.g.*, *Signal IP, Inc. v. Ford Motor Co.*, No. LA CV14–03106 JAK, 2014 WL 4783537, at *4 (C.D. Cal. Sept. 25, 2014) (holding that the likelihood that "more business activity may be disrupted if 16 [of defendant's employee] witnesses are away from work than one [of plaintiff's employee witnesses] . . . weighs substantially in favor of transfer"); *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16–cv–06411–CAS–FFM, 2017 WL 1434265, at *5 (C.D. Cal. Apr. 21, 2017) ("[L]itigation costs are reduced when venue is located near the most witnesses expected to testify . . . .").

ARS's principal corporate records, including its principal records related to marketing and telephone communications, are located or stored in databases, repositories, computers, or files located in Tennessee and/or cloud-based solutions managed by employees in Memphis.  (Zamore Decl. at ¶ 7.)  Although technology has, at least in some respects, eased the burdens of interstate document production, it is well established that the "costs of litigation can still be ***substantially lessened*** if the venue is in the district in which most of the documentary evidence is stored." *Ace Mold (Heifei) Co. Ltd. v. AliphCom*, No. CV 15–8127–RSWL–Ex, 2016 WL 8252923, at *3 (C.D. Cal. Oct. 17, 2016) (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)) (emphasis added); *Lodestar*, 2017 WL 1434265, at *5 (same).  Thus, both cost ***and*** accessibility considerations demonstrate that the Western District of Tennessee is substantially more convenient to ARS than the Central District of California.

Furthermore, it is highly likely that the discovery burdens in this case will fall disproportionately on ARS given that Plaintiff's allegations focus on ARS's

alleged conduct in connection with its telephone operations.  *See Signal IP*, 2014 WL 4783537, at *4 (finding that "Defendant can be expected to have many more trial witnesses than Plaintiff" because "[t]he factual inquiries in the case are focused on Defendant's activities").  Because ARS likely will be required to produce many more documents and witnesses than Plaintiff (under Plaintiff's theory), ARS's close connection to Tennessee weighs in favor of transfer.[7]  *See id.*

Any protest by Plaintiff that he will be inconvenienced by a transfer from the Central District of California is diminished by the fact that far more putative class members reside outside of California than in California given the "nationwide" class action Plaintiff seeks to certify.  *See Castillo v. Cox Commc'ns, Inc.*, No. CV 10-04049-DMG, 2010 WL 11527024, at *2 (C.D. Cal. Aug. 3, 2010) (finding that the transferee forum appeared to be more convenient to the parties because, *inter alia*, more class members resided there).

In short, any resulting inconvenience Plaintiff may claim to suffer would be negligible when compared to the numerous efficiencies that would be realized if this case is transferred.

### b.  The Western District of Tennessee is More Convenient for Key Witnesses.

The convenience to the witnesses of the proposed transferee forum relative to the original forum "is often recognized as the most important factor to be considered in ruling on a motion under § 1440(a)."  *Jovel v. i-Health, Inc.*, No. CV 12–05526 DDP, 2012 WL 5470057, at *4 (C.D. Cal. Nov. 8, 2012).  "In balancing the convenience of witnesses, courts must consider not only the number of witnesses, but also the nature and quality of their testimony."  *Metz*, 674 F. Supp. 2d at 1147 (internal quotations omitted).  Courts "take[] seriously the inconvenience" to "key" employee witnesses, *see Jovel*, 2012 WL 5470057, at *4,

---

[7] ARS maintains that it did not call Plaintiff as alleged in the Complaint and also reserves the right to seek to limit discovery that Plaintiff may attempt to obtain.

and inconvenience to key witnesses can "strongly favor[]" a transfer of venue, *McCormack v. Medcor, Inc.*, No. 2:13–CV–02011 JAM CKD, 2014 WL 1934193, at *3 (E.D. Cal. May 14, 2014).  That is the case here for three principal reasons.

*First*, several of ARS's key potential witnesses currently reside in Tennessee. Specifically, potential witnesses for ARS in this case reside and work in the Memphis area, including:

- Neal Zamore, Senior VP & Chief Marketing Officer (October 1, 2018-Present)

- Brenda Downs, Vice President of Customer Relations (March 28, 2013 – Present)

- Patti Cole, Director of Special Projects (January 14, 2009 – Present)

- Michelle Jakubiak, Marketing Director of the East Zone

- Peter Simpson, Director of Digital Marketing (August 15, 2011 to the Present)

- Stacey Besinger, IT Telecom Manager (July 1, 2017 to the Present)

- Chris Mellon, VP of Marketing for the West Zone (November 1, 2018 to the Present)

Ms. Downs is involved in implementing ARS's marketing strategies, while Ms. Besinger has knowledge regarding ARS's "ownership" of telephone numbers. The other employees and executives identified above have various responsibilities for overseeing marketing efforts of ARS, including interactions with consumers. (Zamore Decl. ¶ 6.)  *See, e.g.*, *Bussen v. WestPark Capital Fin. Servs., LLC*, No. CV 14-6609 PSG, 2014 WL 11512591, at *4 (C.D. Cal. Dec. 4, 2014) (holding the fact that the "most important witness" resided in the transferee venue "weighs heavily in favor of transfer").  Requiring them to travel to California to participate in this litigation—for hearings, depositions, and trial—would be inconvenient to these important witnesses and, as discussed above, costly and disruptive to ARS's business operations.  *See Metz*, 674 F. Supp. 2d at 1148 ("[B]ecause the majority of

potential witnesses are in the New York area, and the only party or witness known to date that is located in California is Plaintiff, the convenience to witnesses weighs in favor of transferring this action to the Southern District of New York.").

The inconvenience to ARS's witnesses of having to litigate this case in California far outweighs any inconvenience that Plaintiff's witnesses might experience if this case were transferred (based on the Complaint Plaintiff might be the only witness for his side). Accordingly, the convenience of the witnesses in this case weighs heavily in favor of transfer. *See Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 778 (N.D. Cal. 2015) (finding that convenience weighed "strongly in favor of [] transfer" because the "majority" of those involved, including all of defendant's corporate witnesses, were based in the transferee forum, while only some of the named plaintiffs resided in their chosen forum).

Moreover, Plaintiff's claims as pleaded focus on ARS's alleged actions and omissions. And while Plaintiff must offer individualized evidence on issues like causation, much of the relevant testimony will likely come from witnesses who are currently employed by ARS, many of whom reside in Tennessee. (Zamore Decl.); *see also Estrella v. Freedom Fin. Network, LLC*, No. SACV09–0189 DOC, 2009 WL 10678991, at *3 (C.D. Cal. July 9, 2009) ("[G]iven that the allegations in the case focus on Defendants' conduct, the convenience of the parties and witnesses weighs in favor of transfer.").

c.    **The Interest of Justice is Best Served By Transferring This Case to the Western District of Tennessee.**

The "heart" of the interest of justice inquiry is to discern which venue has the most "significant connection" to the central dispute in the case. *See Silva v. Aviva PLC*, No. 15-cv-02665-PSG, 2016 WL 1169441, at *4 (N.D. Cal. Mar. 25, 2016) (discussing convenience and fairness). In resolving this inquiry, "it is helpful to consider some of the additional fairness and convenience factors scattered throughout the case law," including those derived from the *forum non conveniens*

-16-

context.  *See Bussen*, 2014 WL 11512591, at *2, *4.  The relevant factors here establish that it is in the interest of justice to transfer the case to the Western District of Tennessee.

*Availability of compulsory process to compel attendance of non-party witnesses*.  Plaintiff has not yet identified any non-party witnesses he would call and identifies a 615 area code (which is a Tennessee prefix).  If any other non-parties are required to testify, ARS would work to reach agreement for an alternative method of testimony, such as by video conference.

*Contacts relating to Plaintiff's cause of action in the chosen forum*.  Plaintiff devotes the majority of the Complaint to allegations (albeit vague or "generic" ones) regarding ARS's marketing operations.  However, virtually all strategic aspects of ARS's marketing programs are overseen by personnel based in ARS's headquarters in Memphis, Tennessee.  Indeed, ARS's marketing activities (or alleged marketing activities) are central to this litigation, all decisions regarding marketing on a national basis (including what types of consumers may be called) are made by ARS employees and executives who work in Memphis.  (Zamore Decl. ¶ 4-6.)  While this is by no means an exhaustive recitation of the activities that might ultimately be relevant to this action, it illustrates that Tennessee is the forum with the most "significant connection" to Plaintiff's claims as pleaded.  *Silva*, 2016 WL 1169441, at *4; *see also Bondali v. Yum! Brands, Inc.*, No. SACV 13-117-JST, 2013 WL 12129379, at *4 (C.D. Cal. May 1, 2013) (finding that "[n]one of the operative facts" occurred in plaintiffs' chosen venue because "[t]he alleged misrepresentations were all made" by corporate employees who worked outside of that venue).

By comparison, the connection between California and Plaintiff's claim is tenuous at best.  Other than stating that Kissick is a California resident, Plaintiff does not allege that ARS engaged in any material conduct or made any relevant decisions in California.

Thus, the fact that Kissick happens to reside in California is of little consequence. *See Jovel*, 2012 WL 5470057, at *6 ("[T]he crux of the case lies not in [plaintiff's] act of purchasing the product in Los Angeles, but instead in issue of the alleged misrepresentations, which [plaintiff] would have perceived in identical form in any state. Thus, the fact that the 'operative facts' occurred in Los Angeles has little weight."). Here, the operative conduct at issue under Plaintiff's theory— ARS's creation and implementation of national marketing operations—took place in Tennessee, which weighs in favor of transfer.

*State most familiar with the governing law.* Another factor relevant to the analysis is "the state that is most familiar with the governing law." *Bussen*, 2014 WL 11512591, at *2. District courts in California and Tennessee are equally familiar with TCPA claims. *See Irrevocable Tr. of Anthony J. Antonious v. Tour Edge Golf Mfg., Inc.*, No. CV 10–2636–GHK, 2010 WL 11523708, at *2 (C.D. Cal. Aug. 31, 2010) ("As the case presents a federal question, both fora are presumed to be equally familiar with the law governing the action.").

*Litigation costs.* As previously noted, it is likely that the discovery burdens in this case will fall more heavily on ARS, given that Plaintiff's allegations focus on ARS's alleged conduct in connection with ARS's marketing program. *See Signal IP*, 2014 WL 4783537, at *4. Because many (if not all) of ARS's key witnesses reside in Tennessee and important document repositories are located there, transferring this action to the Western District of Tennessee would reduce the costs of litigation. *See Lodestar Anstalt*, 2017 WL 1434265, at *5 ("[L]itigation costs are reduced when venue is located near the most witnesses expected to testify . . . ."); *Ace Mold (Heifei)*, 2016 WL 8252923, at *3 (noting that the "costs of litigation can still be ***substantially lessened*** if the venue is in the district in which most of the documentary evidence is stored.") (emphasis added).

In sum, the interests of justice support transferring this case to the Western District of Tennessee.

**C.**  **If The Court Does Not Transfer The Case To The Western District Of Tennessee, The Court Should, In Further Alternative, Dismiss The Claims of Unnamed, Out-Of-State Putative Class Members Pursuant To Rule 12(b)(2) (Or Strike Those Allegations From The Complaint).**

Although the Court should transfer this action for all of the reasons set forth above (if the case is not dismissed outright), if the Court declines to transfer it should dismiss or strike the class allegations of non-California class members based on a lack of personal jurisdiction.  That is because ARS is not subject to personal jurisdiction in California with respect to the claims of absent, non-resident putative class members who did not suffer any alleged injury in California.

ARS is not subject to general jurisdiction in this Court because Plaintiff alleges no facts suggesting that ARS is "at home" in California, *see BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017).  (*See* Complaint ¶ 2 (alleging that ARS is a Delaware corporation with its headquarters in Tennessee).)  And ARS is not subject to specific jurisdiction on the claims of non-residents because they have no connection to California.  *See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) ("*Bristol*").

In *Bristol*, the Supreme Court held that due process prohibited a California court from exercising specific personal jurisdiction over the claims of out-of-state plaintiffs that were insufficiently linked to the defendant's activities in California— notwithstanding the fact that the nonresidents' claims were brought alongside the claims of California plaintiffs who sustained the same injuries in California.  *See id.* at 1778–79; *see also id.* at 1781 ("The mere fact that *other* plaintiffs . . . allegedly sustained the same injuries as did the nonresidents[] does not allow the State to assert specific jurisdiction over the nonresidents' claims.").[8]

---

[8] In *Bristol*, residents from 33 states (including California) filed eight separate complaints in California state court asserting claims under California law. 137 S. Ct. at 1778.  The defendant, Bristol-Myers Squibb, was incorporated in Delaware and headquartered in New York.  *Id.* at 1777.  The plaintiff alleged that they were injured by using the drug Plavix, which Bristol-Myers had developed and

"[T]he upshot of [the *Bristol*] opinion is that Plaintiff cannot join their claims together and sue a defendant in a State in which only some of them have been injured." *Id.* at 1788–89 (Sotomayor, J., dissenting).  Although there is a split among district courts, which have reached different conclusions applying *Bristol*, multiple courts have concluded that they lack personal jurisdiction over the claims of out-of-state plaintiffs who did not suffer cognizable injury in the forum state. *See, e.g.*, *Practice Mgmt . Support Servs., Inc. v. Cirque du Soleil*, 301 F. Supp. 3d 840, 860–62 (N.D. Ill. 2018) (discussing *Bristol*; finding no jurisdiction over claims of putative class members outside Illinois) (TCPA case); *America's Health and Resource Ctr., Ltd., v. Promologics, Inc.*, No. 16 C 9281, 2018 WL 3474444, at *2–*4 (N.D. Ill. July 19, 2018) (citing *Bristol* and striking non-resident putative claims for lack of personal jurisdiction; "[t]he Court lacks jurisdiction over Defendants as to the claims of the nonresident, proposed class members.  As such, the Defendant's Motion is granted in relevant part, and those class members who are not Illinois residents and who allegedly received the fax outside of this state's borders may not be part of the case") (TCPA case); *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 WL 5311903, at *5 (N.D. Ill. Jan. 22, 2019) (applying *Bristol*; due process requires a connection between the forum and the specific claims at issue; "[t]his recognition bars nationwide class actions in fora where the defendant is not subject to general jurisdiction") (TCPA case); s*ee also  e.g.*, *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp.3d 845, 850–51 (N.D. Ohio Mar. 26, 2018) (dismissing FLSA

_____

manufactured in New York and New Jersey.  *Id.* at 1778.  Bristol-Myers obtained regulatory approval and created a nationwide advertising campaign for Plavix, also outside of California.  *Id.*  Though Bristol-Myers did market and sell Plavix in California (earning nearly $1 billion in sales from Plavix in California), none of the out-of-state plaintiffs alleged that they obtained Plavix through a California physician or that they were injured or treated for their injuries in California.  *Id.*

The California Supreme Court held that its state courts could exercise specific jurisdiction over Bristol-Myers with respect to the claims of nonresidents, *id*. at 1779, and the United States Supreme Court reversed, concluding that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State,'" *id*. at 1781.

collection action claims of non-Ohio plaintiffs for lack of personal jurisdiction; "the Court cannot envisage that the Fifth Amendment Due Process Clause would have any more or less effect on the outcome respecting FLSA claims than the Fourteenth Amendment Due Process Clause, and this district court will not limit the holding in *Bristol* to mass tort claims or state courts"); *McDonnell v. Nature's Way Prods., LLC*, No. 16-5011, 2017 WL 4864910, at *5 (N.D. Ill. Oct. 26, 2017) (holding that the court lacked personal jurisdiction over claims of unnamed putative class members with no connection to the forum state); *Spratley v. FCA US LLC*, No. 317-CV-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol* and granting motion to dismiss where "the out-of-state Plaintiffs have shown no connection between their claims and [the defendant's] contacts with [the forum]" and concluding that " the Court lacks specific jurisdiction over the out-of-state Plaintiff' claims"); *Jinright v. Johnson & Johnson, Inc.*, No. 17-1849, 2017 WL 3731317, at *4–5 (E.D. Mo. Aug. 30, 2017) (dismissing the claims of out-of-state plaintiff who did not allege that they purchased, applied, or were injured by the defendants' products in the forum state); *see also BeRousse v. Janssen Research & Dev., LLC*, No. 3:17-cv-00716, 2017 WL 4255075, at *4 (S.D. Ill. Sept. 26, 2017) ("[T]his Court lacks specific personal jurisdiction over defendants regarding the non-[forum] Plaintiff' claims.") (citing *Bristol*, 137 S. Ct. at 1781); *but see, e.g., In re Samsung Galaxy Smartphone Marketing and Sales Practices Lit.*, No. 16-cv-06391, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ("Whether *Bristol-Myers* applies to federal class actions is an open question.").

Here, Plaintiff Kissick is a California resident who purports to represent a nationwide class of all persons who allegedly received calls from ARS in violation of the TCPA.  (*See generally* Complaint.)  Just as the out-of-state plaintiffs' claims in *Bristol* had no connection to the forum state, so too do the claims of the unnamed, nonresident putative class members here have no "adequate link" to California.  *See Bristol*, 137 S. Ct. at 1781.  The sole connection between the claims

1   of absent, out-of-state purported class members and California is that they are

2   alleged to have potentially suffered the same alleged injury **outside** California as

3   Plaintiff Kissick allegedly suffered **in** California.  Under *Bristol*, that is not

4   enough.[9]

5       Based on the allegations in the Complaint, the Court lacks personal

6   jurisdiction over the claims of non-forum putative class members with no

7   connection whatsoever to California.  Those claims therefore must be dismissed or,

8   alternatively, stricken from the Complaint.

9   **IV.   CONCLUSION**

10      For the foregoing reasons, this case should be dismissed in its entirety and

11  the claims of the putative class should be dismissed for failure to state a claim.  In

12  the alternative, Defendant respectfully requests that this case be transferred to the

13  Western District of Tennessee.  In any event, the claims of putative class members

14  should be dismissed because the Court lacks personal jurisdiction over Defendant

15  with respect to those claims.

16

17

---

18  [9] That *Bristol* was a mass action in state court and this is a class action in federal court makes no difference, as courts agree *Bristol's* rationale applies with

19  equal force to both.  *See, e.g., America's Health and Resource Ctr.*, 2018 WL 3474444, at *2 ("*Bristol-Myers Squibb* applies in equal measure to class actions.");

20  *Maclin*, 314 F. Supp. 3d at 850–51 ("[T]he Court cannot envisage that the Fifth Amendment Due Process Clause would have any more or less effect on the

21  outcome respecting [federal] claims than the Fourteenth Amendment Due Process Clause, and this district court will not limit the holding in *Bristol-Myers* to mass

22  tort claims or state courts."); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d at 860–62 (applying *Bristol* to class action federal

23  question case); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) ("The Court . . . lacks

24  personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class.") (citing

25  *Bristol*); *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (applying Bristol to class action federal question

26  case because "[t]he constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class"); *Plumbers' Local

27  Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 3129147, at *9 (E.D. Pa. July 24, 2017) (dismissing all non-forum claims in a class action because

28  "the Non-[forum] Claims do not arise out of or relate to any of [defendants'] conduct within the forum state").

1     May 10, 2019                            JONES DAY

2

3                                     By: */s/ Erna Mamikonyan*

4                                         Erna Mamikonyan

5                                   Attorneys for Defendant
                                  American Residential Services, LLC

6

7    NAI-1507210953

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28